**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HARTFORD CASUALTY INSURANCE
COMPANY,

                Plaintiff,             Case No. 09-14634

v.

                                   HON. MARIANNE O. BATTANI

TRE SERVICES, INC., SEVERSTAL
DEARBORN, INC., a/k/a SEVERSTAL NORTH
AMERICA INC., CERTAIN UNDERWRITERS,
et al.,

                Defendants.

_____/

**OPINION AND ORDER DENYING**
**DEFENDANT SEVERSTAL DEARBORN, INC.'S MOTION TO DISMISS**

**I.    INTRODUCTION**

        Before the Court is Defendant Severstal Dearborn, Inc.'s Motion to Dismiss.  (Doc.

53).   Pursuant to the Federal Declaratory Judgment Act, Plaintiff Hartford Casualty

Insurance Company filed this diversity action seeking a declaration of rights in an insurance

coverage dispute.  (Doc. 37).  In its motion, Defendant Severstal argues that the Court

should exercise its jurisdictional discretion under the Act and abstain from hearing this

matter.  The Court has reviewed the record and finds oral argument will not aid in the

resolution of this dispute.  See, E. D. Mich. LR 7.1(f)(2).  For the reasons that follow,

Defendant Severstal's Motion to Dismiss is **DENIED**.

**II.    BACKGROUND**

        Defendant Severstal Dearborn, Inc. ("Severstal") owns and operates a steel mill in

Dearborn, Michigan.  In 2007, Severstal contracted with Defendant TRE Services, Inc.

("TRE") to recommend and supervise needed repairs and/or design changes with respect to Blast Furnace B at Severstal's steel mill.  Plaintiff Hartford Casualty Insurance Company ("Hartford") issued a general liability insurance policy to TRE.

On January 5, 2008, Blast Furnace B exploded.  The incident caused significant property damage and business interruption loss to Severstal and alleged personal injury to George Burke, an individual who was near the explosion radius.  Burke sued Severstal in Wayne County Circuit Court ("Burke suit").[1]  As a Counter-Plaintiff in that action, Severstal brought claims for indemnification and negligence against TRE and additional claims against the seven other entities.[2]

While the Burke suit was pending, Severstal and its subrogated property insurers filed a separate action against several parties, including TRE, in Wayne Count Circuit Court ("Severstal suit").[3]  In the Severstal suit, the subrogated insurers are seeking recovery of monies they paid to Severstal from TRE for the property damage and business interruption loss allegedly caused by TRE's negligence.  The state court consolidated the Burke Suit with the Severstal suit for discovery purposes.  The discovery is focused on the cause of the explosion.

---

[1]  Burke v. Severstal Dearborn, Inc., Case No. 09-0165110-NO.

[2]  As of August 17, 2010, the parties have reached a settlement in the Burke suit. (Doc. 57 at 2).  Though not finalized, the settlement resolves all disputes between Hartford, TRE, and the other parties concerning defense and indemnity.  The settlement expressly excludes claims in this federal action and does not cover any claims in the still pending Severstal suit.

[3]  Severstal Dearborn, Inc., et al., v TRE Services, Inc., et al., Case No. 09-032008-NO.

Pursuant to the applicable insurance policy, TRE submitted these lawsuits to Hartford for defense and indemnity.  Hartford rejected TRE's requests, explaining that the claims against TRE arise from TRE's alleged "professional services," which the policy expressly excludes from coverage.  After Hartford denied coverage, it filed this declaratory judgment action predicated on diversity jurisdiction.  In this insurance coverage litigation, Hartford asks the Court for a declaration that it owes TRE no duty to defend and no duty to indemnify in the lawsuits pending in state court.  (Doc. 1).  TRE filed a Counterclaim requesting the opposite.  (Doc. 41).  Though Hartford's original complaint did not  caption Severstal as a defendant, the Court granted its unopposed motion to amend, which requested the inclusion of Severstal, and the subrogated property insurers, as defendants pursuant to Fed. R. Civ. Pro. 19(a).  (Doc. 24; Doc. 35; Doc. 37).

Shortly after being added as a party, Severstal filed the instant Motion to Dismiss. (Doc. 53).  It argues that the Court should exercise its discretion under the Federal Declaratory Judgment Act and decline from hearing this matter.  Severstal suggests that Hartford should allow the Wayne County Circuit Court to resolve the coverage dispute by filing a declaratory action in that court.  Defendant Certain Underwriters (a collection of Severstal's subrogated insurers) joined Severstal's motion.  (Doc. 55).  Hartford filed a response in which TRE joined.  (Doc. 57; Doc. 59).

## III.   STANDARD OF REVIEW

The Federal Declaratory Judgment Act ("the Act") provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such a declaration...."  28 U.S.C. § 2201(a) (emphasis added).  "This

3

language affords the district court discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Travelers Indemnity Co. v. Bowling Green Professional Associates, 495 F.3d 266, 271 (6th Cir.2007) (quotations omitted).  The Act confers on the "federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995).  A district court may not decline jurisdiction "as a matter of whim or personal disinclination." Allstate Ins. Co. v. Mercier, 913 F.2d 273, 277 (6th Cir. 1990), *abrogated on other grounds* by Wilton.

District Courts routinely adjudicate cases involving insurance carriers seeking a declaratory judgment in federal court regarding the scope of coverage when their insureds have been sued for alleged tort liability in state court. Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 967-68 (6th Cir. 2000).  In this context, the Sixth Circuit has repeatedly held that "declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court." Bituminous Cas. Corp. v. J & L Lumber Co., Inc., 373 F.3d 807, 812-13 (6th Cir. 2004) (quotations omitted). However, "[t]hat is not to say that there is a per se rule against exercising jurisdiction in actions involving insurance coverage questions." Id.  In order to decide whether the exercise of jurisdiction is proper, a district court in the Sixth Circuit considers several factors:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;'

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction, and

(5) whether there is an alternative remedy which is better or more effective.

Scottsdale Insurance Co. v. Flowers, 513 F.3d 546, 554 (6th Cir. 2008) (citing Grand Trunk

W. R. R. Co. v. Consol. Rail Co., 746 F.2d 323, 326 (6th Cir. 1984)).

## IV.    ANALYSIS

### A.    Settle The Controversy

In Flowers, the Sixth Circuit identified a split of authority regarding this factor in the context of insurance coverage disputes with underlying state court proceedings. Flowers, 513 F.3d at 555. The split arose from the "competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible." Id. One line of cases explains that a declaratory action is proper if it will settle the coverage dispute, although the federal court judgment will not resolve the underlying state court action. Id. (citing cases). The other line requires that the declaratory judgment settle the controversy that is the subject of the underlying state court action. Id. (citing cases). The Flowers court reasoned that different factual circumstance best explain the divergent lines of authority. Id.

To analyze this factor post-Flowers, a district court considers:

whether the question was already being or could be considered in state court, whether the parties were the same in state and federal court, whether parties in the state action would be bound by the federal court action to which they were not a part, whether the issue was one being developed by state court discovery, and whether the scope of coverage or obligation to defend was before the state court.

Grange Mutual Casualty Co. v. Safeco Insurance Co. of America, 565 F.Supp.2d 779, 786 (E.D. Ky. 2008) (citing Flowers, 513 F.3d at 555-56).

5

The Court finds that the declaratory judgments sought by Hartford and TRE will fully settle the insurance coverage controversy, which is the sole question before the Court. This factor favors jurisdiction for three reasons.  First, the coverage disputes in this matter, Hartford's duty to defend and duty to indemnify, are not issues in the state court actions. See generally, Northland Insurance Co. v. Stewart Title Guaranty Co., 327 F.3d 448 (6th Cir. 2003); Allstate Insurance Co. v. Green, 825 F.2d 1061 (6th Cir. 1987); and State Farm Fire and Casualty Co. v. Odom, 799 F.2d 247 (6th Cir. 1986) (all cases in which a declaratory action could settle the insurance coverage controversy not being addressed in the underlying state action).  Second, Michigan law prevents Hartford from consolidating this declaratory action with the underlying tort suits.  See, M.C.L. 500.3030.  Third, since the insurance coverage issues are essentially legal disputes, no disputed issue of fact being addressed by the state court will affect these proceedings.

Contrary to Severstal's position, the resolution of Hartford's duty to defend is not dependent on the state court's fact-specific state law determination of what caused Blast Furnace B to explode.  The duty to defend turns on whether TRE performed "professional services" that fall within the policy's exclusionary clause.  The interpretation of an insurance contract is a question of law for the Court that does not depend on the state court's causation findings.  Also, if this Court finds Hartford has a duty to indemnify, the issue then becomes whether TRE assumed liability in a contract that falls within the definition of an "insured contract" in the policy.  This legal question does not turn on what caused the explosion.  The Court further notes that TRE, Severstal, and the subrogated insurers are parties in both this action and the state court Severstal suit.  After review, this factor weighs in favor of jurisdiction.

6

### B.    Clarifying the Legal Relations

The second factor "is closely related to the first factor and is often considered in connection with it.  Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." Flowers, 513 F.3d at 557 (internal citation omitted).  The Flowers court identified a split of authority on this factor as well.  Id.  One line of cases held that a judgment need only clarify the legal relations presented in the declaratory judgment action, while the other line held that the judgment must also clarify the legal relations in the underlying state action.  Id.  The court resolved the split and held that the judgment of the district court need only clarify the legal relations presented in the declaratory judgment action.  Id. ("[W]e focus only on whether a federal declaratory judgment will clarify the legal relationships presented to the district court").

Here, an Order from the Court will settle the controversy and clarify the legal relations presented by the parties, i.e., whether Hartford owes TRE insurance coverage under the applicable policy.  Specifically, this matter will resolve whether Hartford owes TRE a duty to defend and a duty to indemnify.  This factor favors jurisdiction.

### C.    Procedural Fencing

Federal courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." Flowers, 513 F.3d at 558.  A plaintiff who files a declaratory judgment claim after the state proceeding has begun generally does not implicate the concerns of this rule. See, id.; Northland, 327 F.3d at 454. "A district court should not deny jurisdiction to a plaintiff who has not done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress." Flowers, 513 F.3d at 558 (quotations omitted).

7

The record does not support Severstal's accusation that Hartford is guilty of "procedural fencing." In this case, both the insurer and the insured want to litigate in federal court. Severstal, an entity that is not a party to the insurance contract and has only a contingent financial interest, filed the instant motion to dismiss. Hartford filed this declaratory action after Severstal began the state court actions. Hartford's choice of a federal forum, standing alone, is insufficient to support a finding of an "improper motive." This third factor weighs in favor of exercising jurisdiction.

### D.   Friction Between State and Federal Courts

"[T]he mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." Flowers, 513 F.3d at 560 (quotation omitted). Rather, a court considers three sub-factors when weighing the federalism concerns:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court, and
>
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

Roumph, 211 F.3d at 968.

After balancing these three sub-factors, the Court finds that this factor favors jurisdiction. Beginning with the first, as discussed above, the state court's causation and liability findings do not affect this Court's interpretation of disputed policy language. The Court need not decide whether TRE is liable to Severstal before it decides the scope of coverage issues. On the duty to defend, the question is whether TRE performed

8

"professional services."   Though some factual overlap regarding TRE's conduct with the state court is likely, this Court's focus remains on the nature and type of TRE's activities, rather than the legal and factual cause of the explosion.   Resolution of whether TRE performed "professional services," as the policy defines that term, is of no consequence in the underlying action.   Here, it is the ultimate issue.   The risk of inconsistent holdings on this point is minimal.

Relatedly, depending on how this case proceeds, the Court recognizes that certain factual developments must occur in the underlying action before it can fully adjudicate this dispute, particularly, the duty to indemnify.   See, American States Ins. Co. v. Component Technologies, Inc., 420 F.Supp.2d 373, 374 (M.D. Pa. 2005) ("As a general rule, a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action.").[4]   That recognition does not dissuade the Court from exercising declaratory jurisdiction.

Severstal does not argue that the second sub-factor favors abstention.   Rather, it correctly notes that (as just discussed) that the Court cannot rule on the duty to indemnify (if the Court finds Hartford has a duty to defend) without resolution of causation and liability in the state court.   See, Id.   This ripeness argument does not, however, explain how the exercise of declaratory jurisdiction would be improper.   Moreover, this argument applies in any forum that entertains declaratory actions in insurance coverage disputes and concerns the timing of the indemnify determination, rather than a reason to decline jurisdiction.

---

[4] Hartford and TRE both agree that Pennsylvania law applies to this insurance coverage dispute.

9

Turning to the third sub-factor, insurance contract interpretation is a question of state law with which state courts are more familiar and, therefore, better able to resolve. Bituminous, 373 F.3d at 813-14.  "[S]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation."  Id. at 815 (quotation omitted). "However, not all issues of insurance contract interpretation implicate such fundamental state polices that federal courts are unfit to consider them."  Flowers, 513 F.3d at 561.

Here, since Hartford is not a party in the underlying state court actions and the insurance coverage issues are not before that court, the principles of comity are not offended if the Court exercises jurisdiction. See, Northland, 327 F.3d at 454.  Additionally, TRE and Hartford agree that Pennsylvania law governs this coverage dispute, though the parties did not brief the choice of law issue.  Severstal does not sufficiently explain how this Court's application of Pennsylvania law and policy would frustrate Michigan's interests relating to insurance coverage disputes.  However, given that the underlying incident occurred in Michigan (affecting Michigan residents), and that the bodies substantive law are similar, the Court finds a nexus between the underlying issues of Pennsylvania law and Michigan's public policy.  Nevertheless, this connection is insufficient to tip this sub-factor toward abstention because this case does not raise unsettled areas of insurance law and does not involve fundamental public policy concerns.  See, Flowers, 513 F.3d at 561.

### D.   Availability of Alternative Remedy

A district court's inquiry on this factor "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff."  Flowers, 513 F.3d at 562.  When state law provides an avenue for the resolution of insurance coverage,

10

the fifth factor favors declining jurisdiction.  Id.  Michigan allows insurers to bring declaratory judgment actions in state court.  See, Mich. Ct. R. 2.605; see also, Rose v. State Farm Mut. Auto. Ins. Co., 732 N.W.2d 160, 162 (Mich. App. 2006).

The facts of this case support a finding that Hartford has an adequate alternative remedy.  It is well established that Michigan law entertains declaratory actions in the context of insurance coverage disputes.  Although M.C.L. § 500.3030 prohibits the state court judge from resolving the coverage issue within the underlying tort suit, the judge may retain jurisdiction over an ancillary, declaratory suit that resolves the coverage dispute. Relatedly, the state court will most likely address the nature and quality of TRE's conduct in the underlying suits, although for causation purposes.  Those findings could cross-over into a declaratory action.

However, Severstal does not explain how a state forum is somehow "better or more effective" at resolving this coverage dispute.  Flowers, 513 F.3d at 562.  For instance, regarding the indemnification issue, a declaratory action in state court would be no more efficient than this federal action because neither court could address that issue until the state court decides liability and causation in the underlying tort action.  Furthermore, established precedent provides guidance to this Court on the issues raised in this matter. See generally, Shuler v. Michigan Physicians Mut. Liability Co., 679 N.W.2d 106 (Mich. App. 2004); Biborosch v. Transamerica Ins. Co., 603 A.2d 1050 (Pa. Super. 1992).  The Court also notes the practical implication of dismissal - the parties restart coverage litigation in a different forum, incurring additional and unnecessary expense.  Because of the compelling arguments on both sides, this factor is neutral in the analysis.

E.    Balancing the Factors

11

The Sixth Circuit has yet to provide specific guidance on how a district court should balance these factors.  <u>Flowers</u>, 513 F.3d at 563.  Instead, "district courts must rely on the 'unique and substantial' discretion granted to them by the Declaratory Judgment Act."  <u>Grange Mutual</u>, 565 F.Supp.2d at 791 (quoting <u>Id</u>.).  In this matter, all of the factors weigh in favor of jurisdiction, except one that is neutral.  Accordingly, the Court will exercise jurisdiction under the Act and facilitate the resolution of this insurance coverage dispute.

## V.     CONCLUSION

For the reasons stated above, Defendant Severstal's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

s/Marianne O. Battani

MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

**DATED:** <u>January 14, 2011</u>

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
Case Manager

12